UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. S1-4:06CR00149 ERW (AGF) |
| JULIE DIANE LEWIS, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on the pretrial motion filed by Defendant, Julie

Diane Lewis.  Pretrial matters were referred to the undersigned United States Magistrate

Judge under 28 U.S.C. § 636(b).  Defendant filed a motion to dismiss Count Sixty-Two

of the superseding indictment, which contains a forfeiture request.  (Doc. No. 24).

Following the filing of a superseding indictment (Doc. No. 27), the parties were given the

opportunity to supplement their motion papers.  A hearing on the motion was held on

May 25, 2006.  The government was represented by Assistant United States Attorneys

Julia M. Wright and Raymond M. Meyer, and Defendant was represented by her

attorney, Robert T. Haar.  The parties were given leave to file post-hearing memoranda,

after which the matter was taken under advisement.  Trial is scheduled for July 31, 2006.

# FINDINGS AND CONCLUSIONS

## Introduction

In the superseding indictment, Defendant Julie Diane Lewis ("Lewis") is charged with 16 counts of wire fraud, in violation of 18 U.S.C. § 1343, and 45 counts of mail fraud, in violation of 18 U.S.C. § 1341, related to an alleged scheme to defraud her employer. The indictment alleges that from a period beginning in or about January 1998, and continuing until approximately September 2005, Defendant Lewis diverted business funds of her employer to pay her personal expenses. It is alleged that during this period the losses associated with this scheme were greater than $2.5 million, and that from the period March 28, 2001 to the date of the indictment, losses were at least $2,401,432.95.

In Count Sixty-Two of the superseding indictment, the government seeks forfeiture pursuant to 28 U.S.C. § 2461(c) and 18 U.S.C. § 981(a)(1)(C), alleging, in paragraph 2, that the real and personal property of Defendant Lewis obtained directly or indirectly as a result of the wire fraud and mail fraud violations is subject to forfeiture. (Count 62, ¶ 2). In paragraph 3, the indictment seeks $2,401,432.95 in currency, as property constituting, or derived from, any proceeds Defendant obtained directly or indirectly as a result of the offenses alleged in Counts One through Sixty-One. (Count 62, ¶ 3). In paragraph 4 of the forfeiture count, the government specifically lists three parcels of real property, which it alleges are subject to forfeiture. (Count 62, ¶ 4). In paragraph 5, the government seeks the forfeiture of substitute property, under 21 U.S.C. § 853(p), up to the value described in paragraphs 3 or 4, if, as a result of any act or omission of Defendant, any of the

property described in said paragraphs cannot be located upon the exercise of due diligence; has been transferred to, sold to, or deposited with a third person; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; and/or has been commingled with other property that cannot be subdivided without difficulty.  (Count 62, ¶ 5).

In her motion to dismiss, Defendant first asserts that under the relevant statutes, criminal forfeiture is available for mail fraud and wire fraud only where that fraud affects a financial institution, and that only civil forfeiture is available for general charges of mail and wire fraud.  Defendant asserts further that even if the amendments to the forfeiture statutes adopted in 2000 made criminal forfeiture available for general mail fraud and wire fraud charges, the only property subject to forfeiture is the specific property which could be recovered under civil forfeiture.  As such, Defendant contends that the government cannot obtain either a money judgment for the full amount of the proceeds or any substitute assets.  Finally, to the extent the superseding indictment seeks the forfeiture of real property, Defendant asserts that the indictment should be dismissed because the allegations are legally insufficient from a notice standpoint.

A.    **Availability of Criminal Forfeiture for Mail and Wire Fraud Under the Civil Asset Forfeiture Reform Act**

In the superseding indictment,[1] the government seeks forfeiture under 28 U.S.C. §

_____

[1] In the initial indictment, the government sought forfeiture under the criminal forfeiture statute, 18 U.S.C. § 982(a)(2)(A).  After Defendant filed her motion to dismiss, the government superseded the indictment to base its forfeiture allegations on 28 U.S.C. §

3

2461(c) and 18 U.S.C. § 981(a)(1)(C).  In 1989, Congress amended the forfeiture statutes

to allow civil forfeiture of any property which constitutes or is derived from proceeds

traceable to a violation of §§ 1341 or 1343 "affecting a financial institution," and also to

allow criminal forfeiture of proceeds for violations of a host of statutes, including §§

1341 and 1343, "affecting a financial institution."  <u>See</u> Pub. L. No. 101-73, Title IX, §

963, 103 Stat. 504 (1989) (current version at 18 U.S.C. §§ 981(a)(1)(C) and

982(a)(2)(A)).  <u>See generally</u>, <u>United States v. Lebed</u>, 2005 WL 2495843, at *5 (E.D. Pa.

Oct. 7, 2005).

In 2000, Congress passed the Civil Asset Forfeiture Reform Act ("CAFRA"),

which enacted sweeping changes to the provisions governing civil forfeiture, to provide

greater protections to persons whose property was subject to civil forfeiture.  Pub. L. No.

106-185, 114 Stat. 202 (2000).  <u>See</u> <u>United States v. Schlesinger</u>, 396 F. Supp. 2d 267,

276-77 (E.D.N.Y. 2005).  As part of the CAFRA amendments, Congress also expanded

the scope of the forfeiture provisions.  It amended the civil forfeiture statute to allow civil

forfeiture for any violations of mail fraud or wire fraud.  This was effected by deleting

the language that had limited violations of §§ 1341 and 1343 to those "affecting a

financial institution," and adding language to permit civil forfeiture of any property which

constitutes or is derived from proceeds traceable to a violation of  "any offense

constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or

_____

2461(c) and 18 U.S.C. § 981(a)(1)(C), an action which Defendant anticipated and
addressed in her initial memorandum in support of her motion to dismiss.

a conspiracy to commit such offense." Civil Asset Reform Act of 2000, Pub. L. No. 106-185, § 20, 114 Stat. 202, 204 (2000). <u>See</u> <u>Lebed</u>, 2005 WL 2495843, at *9. The parties here agree that violations of the general mail fraud and wire fraud statutes are within the definition of "specified unlawful activity" under § 1956(c)(7), and are therefore covered by § 981(a)(1)(C).[2]

In CAFRA, Congress also amended 28 U.S.C. § 2461, which pertains to the mode of recovery for fines, penalties, and forfeitures, to allow the government to seek forfeiture in criminal proceedings with regard to violations which authorized civil forfeiture, as follows:

### § 2461. Mode of Recovery

(c) If a forfeiture of property is authorized in connection with a violation of an Act of Congress, and any person is charged in an indictment or information with such violation but no specific statutory provision is made for criminal forfeiture upon conviction, the Government may include the forfeiture in the indictment or information in accordance with the Federal Rules of Criminal Procedure, and upon conviction, the court shall order the forfeiture of the property in accordance with the procedures set forth in section 413 of the Controlled Substances Act (21 U.S.C. 853), other than subsection (d) of that section.

Pub. L. No. 106-185, § 16, 114 Stat. 221 (2000); 28 U.S.C. § 2461(c) (amended March 9, 2006). <u>See generally</u> <u>Schlesinger</u>, 396 F. Supp. 2d at 274.

---

[2] 18 U.S.C. § 1956(c)(7)(A) includes among "specified unlawful activity" offenses under 18 U.S.C. § 1961(1), which in turn, includes mail fraud under 18 U.S.C. § 1341 and wire fraud under 18 U.S.C. § 1343. <u>See</u> <u>United States v. Vampire Nation</u>, __ F.3d __, 2006 WL 1679385, at *6 n.10 (3d Cir. 2006); <u>United States v. Day</u>, 416 F. Supp. 2d 79, 86 (D.D.C. 2006).

The government here asserts that because the forfeiture of property for violations of mail and wire fraud is authorized under the civil forfeiture statute, and no specific statutory provision is made for criminal forfeiture upon such conviction, criminal forfeiture is now available under 28 U.S.C. § 2461(c). Defendant, however, contends that because criminal forfeiture is available for mail fraud and wire fraud, but limited to such violations affecting a financial institution,[3] criminal forfeiture under 28 U.S.C. § 2461(c) is precluded by the language of § 2461(c), which allows such forfeiture through a criminal indictment only where "no specific statutory provision is made for criminal forfeiture upon conviction." As such, Defendant asserts, even after CAFRA, criminal forfeiture exists under these statutes only for mail fraud and wire fraud violations affecting a financial institution.[4]

In construing a federal statute, the Court must "look first to the plain meaning of the words of the statute." United States v. Smith, 171 F.3d 617, 620 (8th Cir. 1999) (citing Salinas v. United States, 522 U.S. 52, 118 S. Ct. 469, 474 (1997)). This includes and examination of "the language and design of the statute as a whole," and "its placement and purpose in the statutory scheme." United States v. McCall, 439 F.3d 967, 975-76 (8th Cir. 2006) (citations omitted). "Only if the statute is ambiguous do we look

---

[3] The Court observes that the statute also permits criminal forfeiture for mail and wire fraud involving the sale of assets held by the RTC and others, and for offenses involving telemarketing. 18 U.S.C. § 982(a)(3) and (8).

[4] The parties here agree that the violations alleged in the superseding indictment do not "affect a financial institution" within the meaning of 18 U.S.C. § 982.

6

to the legislative history to determine Congress's intent." Smith, 171 F.3d at 720 (citing

United States v. Gonzales, 520 U.S. 1, 117 S. Ct. 1032, 1035 (1997)); accord, United

States v. Kirchoff, 387 F.3d 748, 750 (8th Cir. 2004), cert. denied, 125 S. Ct. 2936

(2005).

As Defendant notes, her interpretation of the statute was adopted in United States

v. Croce, 345 F. Supp. 2d 492, 496 (E.D. Pa. 2004) ("Croce II") (criminal forfeiture not

available under § 2461(c) with respect to proceeds of mail fraud), and followed in Day,

416 F. Supp. 2d at 86-87. See also United States v. Thompson, 2002 WL 31667859, *2

(N.D.N.Y. 2002) (finding specific statutory provision governing criminal forfeiture in

narcotics case, thereby disallowing application of § 2461(c)).

The Court notes, however, that on June 20, 2006, the Third Circuit expressly

rejected Croce II on this ground, and held that § 2461(c) authorizes criminal forfeiture for

general mail fraud. See Vampire Nation, 2006 WL 1679385 at *7-8. Other courts have

likewise rejected Defendant's reasoning and have held that the plain terms of § 2461(c)

permit criminal forfeiture for mail fraud and/or wire fraud. See United States v. Smairat,

2006 WL 1554412, at *9 (N.D. Ill. June 1, 2006); Schlesinger, 396 F. Supp. 2d at 277;

Lebed, 2005 WL 2495843, at *7-8.[5] See also United States v. Razmilovic, 419 F.3d 134,

---

[5]     The Ninth Circuit also held that § 2461(c) authorizes criminal forfeiture related
to general mail or wire fraud violations. See United States v. Rutledge, 437 F.3d 917,
920-21 (9th Cir. 2006). The court withdrew is opinion, however, because the appeal was
rendered moot by the terms of a plea agreement reached prior to the court's opinion.
United States v. Rutledge, 448 F.3d 1080 (9th Cir. 2006).

136 (2d Cir. 2005) (§ 2461(c) "authorizes criminal forfeiture for an act for which civil forfeiture is authorized"; assumes criminal forfeiture available for mail, wire and securities fraud); United States v. Wittig, 2006 WL 13158, at *2 n.7 (D. Kan. 2006) (noting prior denial of motion to dismiss which argued criminal forfeiture for wire fraud was not authorized without the special circumstances referenced under 18 U.S.C. § 982).

The problem with Defendant's argument is that she broadly focuses upon the statutes, while the language of § 2461(c) focuses upon the particular violations at issue. It asks whether forfeiture is authorized in connection with a particular *violation* of an Act of Congress, and then asks whether a provision is made for criminal forfeiture upon conviction (for such violation). As applied to these facts, the plain language of the statute thus directs the court to answer two questions: (1) is a forfeiture of property authorized in connection with a general violation of the mail fraud and wire fraud statutes, and (2) is there any specific statutory provision made for criminal forfeiture upon conviction of such violation? Clearly, as Defendant concedes, a forfeiture is authorized in connection with the violation of the general mail and wire fraud statutes alleged in this indictment under 18 U.S.C. § 981(a)(1)(C). It is likewise clear that no specific statutory provision is otherwise made for criminal forfeiture upon conviction for such violations. As such, the Court finds that under the plain meaning of § 2461(c), the government may seek forfeiture in the indictment for violations of the mail and wire fraud statutes, and that criminal forfeiture is not limited to violations affecting a financial institution. This is consistent with the language of 18 U.S.C. § 983, which was adopted at the same time as §

2461(c), which narrowly defines the "civil forfeiture statute" as "any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense." 18 U.S.C. § 983(i).

Even if the Court were to find the language of § 2461(c) to be ambiguous – and the Court does not so find – this result is also supported by the legislative history. Defendant implies that the purpose of CAFRA with regard to this provision was to avoid the necessity of parallel civil and criminal proceedings. Doc. No. 25, p. 5. The Court disagrees. Concerned with abuses it had observed in use of the civil forfeiture provisions, such as the seizure and retention of property from innocent individuals who were never prosecuted, based on nothing more than a probable cause standard, Congress did two things: it added greater protections for those whose property was subject to seizure, and also elected to expand and encourage the use of criminal forfeiture, a process that provided more due process protections.

The legislative history is replete with references recognizing that by adopting § 2461(c), Congress hoped to encourage greater use of criminal, rather than civil forfeiture. While avoiding parallel proceeding was one salient effect of the proposed amendments noted by Congress in its debate in 1997, see H.R. Rep. No. 105-358(I) at 62 (1977), a review of the legislative history does not support that it was the purpose behind the adoption of this provision. See 146 Cong. Rec. S 1753, S 1759 (2000) ("The bill also extends forfeiture authority to any Federal statute in which civil forfeiture authority exists in order to encourage the use of criminal forfeiture."); 146 Cong. Rec. H 2040, H 2047

(2000) ("H.R. 1658 also contains a number of provisions addressing the needs of the

Justice Department and State and local law enforcement.  These include increasing the

availability of criminal forfeiture and the civil forfeiture of the proceeds of crimes . . . .");

H.R. Rep. 105-358(I) at 62 (1997) ("Section 30 is intended to give the U.S. Attorneys the

option of pursuing criminal forfeiture as an alternative to civil forfeiture if civil forfeiture

is otherwise authorized. . . . To encourage greater use of criminal forfeiture – with its

heightened due process protection – this amendment revises section 2461(a) to authorize

criminal forfeiture whenever any form of forfeiture is otherwise authorized by statute.").

Indeed, in its final version, the provision was entitled, "Encouraging use of criminal

forfeiture as an alternative to civil forfeiture."  146 Cong. Rec. H. 2040, 2040 (2000); 146

Cong. Rec. S 1753, S 1753 (2000).  And, as noted above, Congress intended, by adoption

of this provision, "to authorize criminal forfeiture *whenever any form of forfeiture is

otherwise authorized* by statute."  H.R. Rep. 105-358(I) at 62 (emphasis added).  See

Schlesinger, 396 F. Supp. 2d at 276 (quoting Committee Report, as follows:

"Availability of Criminal Forfeiture and Proceeds Forfeiture.  The Act provides that

whenever federal law allows for civil forfeiture of property involved in a specific crime,

criminal forfeiture will also be available.  It also provides that the proceeds of specified

money laundering predicate offenses will be subject to civil forfeiture.").

    As such, even if one were to find the language of § 2461(c) to be ambiguous, the

legislative history supports a finding that Congress intended to make criminal forfeiture

available for violations of the mail fraud and wire fraud statutes.  See Vampire Nation,

2006 WL 1679385, at *8 (legislative history supports finding that Congress intended to

expand availability of criminal forfeiture to general mail fraud); <u>Smairat</u>, 2006 WL

1554412, at *9-10 (same regarding wire fraud); <u>Lebed</u>, 2005 WL 2495843, at *9 (same).

## B.  Personal Money Judgments in Forfeiture

Defendant further asserts that the personal money judgment the government seeks

in paragraph 3 of Count Sixty-Two should be dismissed.  Defendant contends first that 18

U.S.C. § 981 does not permit a personal money judgment.  She also argues that the courts

are split on the availability of such judgments related in cases involving criminal

forfeiture, and even if such relief were otherwise available, it would not be authorized for

charges of mail and wire fraud, as the government may only proceed against specific

property.

The Court agrees with Defendant Lewis that a personal money judgment is not

available under 18 U.S.C. § 981, as civil forfeiture proceeds are <u>in rem</u> proceedings that

attach to specific property.  But here the government is not proceeding under the civil

forfeiture statute, but rather, is proceeding under 28 U.S.C. § 2461(c), which permits the

government to pursue the forfeiture as part of the criminal indictment.  The question then

is not whether such a judgment is available under the civil forfeiture statute, but rather

whether it is available in connection with a criminal forfeiture proceeding pursuant to §

2461(c).

In support of her motion, Defendant questions the propriety of personal money

judgments even in criminal proceedings.  Defendant asserts that the courts are split on the

issue of whether such judgments are available even in RICO, narcotics, and money laundering cases, citing to an earlier opinion of the district court in <u>United States v. Croce</u>, 334 F. Supp. 2d 781, 794 (E.D. Pa. 2004) ("<u>Croce I</u>"), which, again, was followed by the district court in <u>Day</u>. The Court disagrees.

The ruling by the district court in <u>Croce I</u> is no longer good law. In <u>Vampire Nation</u>, the Third Circuit also expressly rejected the reasoning expressed in <u>Croce I</u>. <u>See Vampire Nation</u>, 2006 WL 1679385, at *6. Its reasoning has also been rejected by other circuits. <u>See United States v. Casey</u>, 444 F.3d 1071, 1076 (9th Cir. 2006) (court unpersuaded by the reasoning in <u>Croce</u>); <u>United States v. Hall</u>, 434 F.3d 42, 59 (1st Cir. 2006) (rejecting <u>Croce</u> as inconsistent with the law of the circuit). In <u>Vampire Nation</u>, the court affirmed an *in personam* criminal forfeiture judgment for the amount of the proceeds of the defendant's mail fraud crimes, filed under 28 U.S.C. § 2461(c), even though the amount exceeded the defendant's assets at the time of sentencing. <u>See Vampire Nation</u>, 2006 WL 1679385, at *8-10.

As recognized by the Third Circuit, the determination that personal money judgments are available in criminal forfeiture proceedings is in line with other circuits, including the Eighth Circuit. <u>Id.</u> at 10. In <u>United States v. Huber</u>, 404 F.3d 1047 (8th Cir. 2005), the Eighth Circuit recognized that forfeiture in a money-laundering case "allows the government to obtain a money judgment representing the value of all property 'involved in' the offense, including 'the money or other property being laundered (the corpus),' and 'any property used to facilitate the laundering offense.'" <u>Id.</u> at 1056

(quoting United States v. Hawkey, 148 F.3d 920, 927 (8th Cir. 1998). Though

recalculating the amount due, the Court otherwise affirmed entry of a personal money

judgment under Rule 32.2 of the Federal Rules of Criminal Procedure.[6] Other courts

have agreed. See, e.g., Casey, 444 F.3d at 1074-77 (forfeiture money judgment for

Controlled Substances Act violation); Hall, 434 F.3d at 59-60 (forfeiture money judgment

for drug trafficking violation); United States v. Baker, 227 F.3d 955, 968-70 (7th Cir.

2000) (forfeiture money judgment for violation of money laundering statute involving

operation of prostitution business); United States v. Candelaria-Silva, 166 F.3d 19, 42

(1st Cir. 1999) ("criminal forfeiture may take several forms [including] an in personam

judgment against the defendant for the amount of money the defendant obtained as

proceeds of the offense"); accord, United States v. Rodriguez, __ F. Supp. 2d __, 2006

WL 1314680, at *12 (D.N.J. May 12, 2006) (money judgment in amount of forfeiture for

violation of structuring statutes); United States v. Thompson, 2002 WL 31667859, at *2

(N.D.N.Y. Nov. 26, 2002) (dicta recognizing § 2461(c) allows the government to seek

criminal forfeiture, including an *in personam* judgment); see also United States v.

Amend, 791 F.2d 1120, 1127 n.6 (4th Cir. 1986) (government need not offer evidence

---

[6] The Court notes that the government relies on Rule 32.2 in support of its argument in favor of a money judgment. Defendant, on the other hand, notes that at the time of its adoption in 2000, the Advisory Committee declined to take a position on the propriety of forfeiture money judgments. See Fed. R. Crim. P. 32.2, Advisory Committee Note. But one must assume that the Eighth Circuit, in affirming the district court's personal money judgment under Rule 32.2 in 2005, was aware of the Advisory Committee Note.

that the forfeitable assets were still in existence at time of sentencing).

The courts have reasoned that criminal forfeiture is an *in personam* proceeding, and that 21 U.S.C. § 853(a) speaks in mandatory terms, stating "[t]he court, in imposing sentence on such person shall order, in addition to any other sentence imposed . . . that the person forfeit to the United States all property described in this subsection."  In addition, 21 U.S.C. § 853(o) directs that its provisions be "liberally construed to effectuate its remedial purposes."  Allowing forfeiture money judgments furthers the remedial purposes of the criminal forfeiture statutes, while a result which disallows such judgments encourages defendants to dissipate the proceeds of violations, contrary to the statutes' remedial purposes.  The Court finds this reasoning persuasive, and further is constrained to find that personal money judgments are available in criminal forfeiture proceedings by the Eighth Circuit law, as expressed in <u>Huber</u>.

The Court also rejects Defendant's assertion that even if a forfeiture money judgment is available in other contexts involving criminal forfeiture proceedings, it should not be available for proceedings brought under 28 U.S.C. § 2461(c).  Defendant asserts that no court has authorized a personal money judgment with respect to general mail fraud or wire fraud violations, citing <u>Day</u>.  While perhaps true at the time Defendant filed her motion, this statement is no longer true, since the appellate court issued an opinion doing just that in <u>Vampire Nation</u>.  Even more recently, the Eleventh Circuit affirmed a sentence imposing a personal money judgment in the amount of the wholesale value of cigarette trafficking violations, pursuant to 18 U.S.C. § 981(a)(2)(A) and 28

U.S.C. § 2461(c).  See United States v. Noorani, 2006 WL 1759618, at *1, 3 (11th Cir.

June 28, 2006).  Nor does it answer the question simply to reassert that these cases are

different from other criminal forfeiture cases.

The Court must start, once again, with the language of the statute.  Here, however,

there is little to assist the Court in the language of § 2461(c) itself; the provision neither

expressly makes available nor precludes forfeiture money judgments.  One can argue that

the language of the first line of the statute, which references "*a* forfeiture of property,"

coupled with the later reference to "the forfeiture of *the* property," was intended to limit

forfeitures under § 2461(c) to the specific property that could be forfeited under the

initial act by Congress, in this case, the civil forfeiture statute.  But this is far from a clear

indication, and other constructions are equally plausible.

Once can also argue, under the reasoning of Croce I and Day, that the fact that

Congress incorporated the "procedures" of 21 U.S.C. § 853 here, rather than the

"provisions" of § 853, as it did in 18 U.S.C. § 982, signals an intent to construe § 2461(c)

in a more limited fashion.  But, as discussed above, this holding in Croce I was abrogated

by the Third Circuit in Vampire Nation.  Moreover, the reasoning of Croce I does not

give effect to the language of 21 U.S.C. § 853(o), which is also incorporated by §

2461(c).  The fact is, neither the specific language of § 2461(c), nor the language and

design of the statute as a whole addresses this issue.  As such, the Court finds the

language of the statute is ambiguous with respect to the availability of personal money

judgments.

Though not conclusive, the legislative history does weigh in favor of finding the availability of personal money judgments under CAFRA.  The Court has found nothing in the legislative history surrounding the drafting and adoption of CAFRA that suggests that any new category of criminal forfeiture was intended to be adopted.  Given the overall purposes of the statute, this absence is meaningful.  One of the main concerns of Congress in adopting CAFRA was to make the procedures regarding civil forfeiture more fair to those whose property might be subject to forfeiture.  Against this backdrop, one would expect, if Congress intended § 2461(c) to have limited focus and thereby disallow certain forfeitures, that such limitation would somewhere be noted.  But the legislative history reviewed by the Court thus far nowhere suggests that the forfeitures under the new § 2461(c) would be treated any differently than any other criminal forfeitures.

To the contrary, as noted above, Congress expressed a comfort level with the greater due process protections afforded in a criminal forfeiture proceeding, and consistent with the heading attached to the amendment, expressed its intent to encourage the use of criminal rather than civil forfeiture.  See 146 Cong. Rec. 5221, 5226 (2000).  In voicing this intent, Congress spoke in broad terms.  See 146 Cong. Rec. 3654 (2000) ("The bill also extends *criminal forfeiture authority* to any Federal *statute* in which civil forfeiture exists in order to encourage the use of criminal forfeiture.") (emphasis added); H.R. Rep. 105-358(I) at 35-36 ("To encourage greater use of criminal forfeiture – with its heightened due process protection – this amendment would revise section 2461(a) to authorize criminal forfeiture *whenever any form of forfeiture is otherwise authorized* by

16

statute.") (emphasis added).  As discussed above, it is also clear from the legislative history that Congress intended to increase the availability of both criminal forfeiture and civil forfeiture for crimes which generate criminal proceeds.  It did this by making civil forfeiture available for general mail fraud and wire fraud, and simultaneously making criminal forfeiture available wherever civil forfeiture is authorized.

It is important to note, in this regard, that Congress was well aware of the case law permitting personal money judgments in criminal forfeiture cases when it adopted CAFRA.  The 1997 House version contained a provision, Section 28, which does not appear in the final version, that specifically excepted *in personam* money judgments from the provisions protecting third party interests in 18 U.S.C. § 1963(i)(1) and 21 U.S.C. § 853(n)(1), on the ground that such protections were unnecessary in that context.  H.R. Rep. 105-358(I) at 14.  The discussion surrounding this provision expressly recognizes the availability of money judgments in criminal forfeiture cases.  It further states:  "It is well-established that in a criminal forfeiture case, the court, in lieu of ordering the forfeiture of specific assets, can enter a personal money judgment against the defendant for an amount of money equal to the amount otherwise subject to forfeiture."  Id. at 61. Footnote 109, that follows this sentence, cites to United States v. Voigt, 89 F.3d 1050 (3d Cir. 1996); United States v. Ginsburg, 773 F.2d 798, 801 (7th Cir. 1985) (en banc); and United States v. Conner, 752 F.2d 566, 576 (11th Cir. 1985), all cases recognizing the government's entitlement to a personal money judgment.  Id. at 61 & n.109. Notwithstanding this awareness, there is no mention of treating criminal forfeitures under

CAFRA any differently from other criminal forfeitures.

Because the overwhelming weight of authority, including Eighth Circuit authority, permits a personal money judgment in a criminal forfeiture proceeding, and neither the plain language nor the legislative history shows an intent by Congress to treat criminal forfeitures under CAFRA any differently than other criminal forfeitures, the Court finds that the government may seek a personal money judgment in the amount of the proceeds otherwise subject to forfeiture.  See Noorani, 2006 WL 1759618, at *3; Vampire Nation, 2006 WL 1679385, at *9.

### C. Forfeiture of Substitute Assets

The government asserts that the forfeiture of substitute assets is authorized under 28 U.S.C. § 2461(c), which, the government contends, incorporates 21 U.S.C. § 853(p). Defendant counters that allowing the forfeiture of substitute assets is inconsistent with the civil forfeiture scheme, which assumes the "guilt" of a specific piece of property.  She further asserts that substitute assets are precluded by the plain language of § 2461(c), which incorporates the "procedures" of § 853, while other criminal forfeiture provisions, including 18 U.S.C. § 982, incorporate the "provisions" of § 853.

Defendant's first argument is unpersuasive.  Though properly describing the legal fiction underlying civil forfeiture, which assumes that an inanimate object can be guilty of something, Defendant's argument simply does not address the question at issue here, namely, the scope of the expansion of criminal forfeiture effected by the CAFRA amendment.

Defendant's second argument, however, poses a much closer and more difficult question. The few courts that have decided this issue are not in agreement. Several courts have allowed substitute assets under § 2461(c), including Day, upon which Defendant relies regarding her other arguments. See United States v. Alamoudi, __ F.3d __, 2006 WL 1727647, at *3 (4th Cir. June 26, 2006) (finding the forfeiture of substitute assets mandatory upon a proper showing, where forfeiture was permitted under § 2461(c)); Vampire Nation, 2006 WL 1679385, at *9 (court assumed substitute assets were available in the course of decision regarding the availability of money judgments); Day, 416 F. Supp. 2d. at 88-89 (court authorized to forfeit substitute property under § 2461(c) and 18 U.S.C. § 981(a)(1)(C)); see also United States v. Reiner, 2005 WL 3005089, at *1 (D. Me. Nov. 7, 2005) (in dicta, suggests government could pursue substitute property).

On the other hand, the district court in Rodriguez held substitute assets were not available with regard to a currency transaction violation under 31 U.S.C. § 5317,[7] which,

_____

[7] 31 U.S.C. § 5317(c) which provides for both criminal and civil forfeiture, states:

**(c) Forfeiture –**

 **(1) Criminal forfeiture.–**
  **(A) In general.–** The court in imposing sentence for any violation of section 5313, 5316, or 5324 of this title, or any conspiracy to commit such violation, shall order the defendant to forfeit all property, real or personal, involved in the offense and any property traceable thereto.
  **(B) Procedure.–** Forfeitures under this paragraph shall be governed by the procedures established in section 413 of the

like § 2461(c), adopts the "procedures" of 21 U.S.C. § 853. Like Defendant, the Court in

Rodriguez noted that in § 5317(c)(1)(B), Congress adopted the "procedures" of § 853,

while it had adopted the "provisions" of § 853 elsewhere, and reasoned that one must

assume this difference was deliberate. Id. at *15. The court also found that a

determination that Congress intended by this language to adopt something less than the

"provisions" of § 853 was consistent with Congress's approach to treat currency

violations less seriously than RICO and other money laundering violations. Id. Finally,

the court found the term "procedures" to be unambiguous, and that the substitute asset

subsection of § 853(p) was substantive, and not procedural. Id. at 16-17.

While this reasoning, at first blush, is appealing, there are several problems with

the argument. First, unlike the court in Rodriguez, the undersigned does not find it so

clear what constitutes a "procedure" under 21 U.S.C. § 853. For example, is § 853(c)

governing third party transfers a procedure? Although it specifies the procedures for third

parties to challenge forfeitures, it also has substantive aspects. Moreover, Congress has

already shown it knows how to except portions of § 853 by its exception of § 853(d).

---

Controlled Substances Act.

 **(2) Civil Forfeiture.–** Any property involved in a violation of section
5313, 5316, or 5324 of this title, or any conspiracy to commit any such
violation, and any property traceable to any such violation or conspiracy,
may be seized and forfeited to the United States in accordance with the
procedures governing civil forfeitures in money laundering cases pursuant
to section 981(a)(1)(A) of title 18, United States Code.

Congress also limited the reach of substitute asset forfeiture by express language in 18 U.S.C. § 982(b)(2). Against this backdrop, it appears unreasonable to assume Congress intended to abandon the parties to such murky waters with respect to the remainder of the subparagraphs of § 853.

Further, as the government correctly notes, prior to the adoption of CAFRA, several courts had held that the substitute asset provision in § 853(p) is procedural and not substantive, in the context of ex post facto arguments. See United States v. Reed, 924 F.2d 1014, 1017 (11th Cir. 1991); United States v. Crozier, 777 F.2d 1376, 1383 (8th Cir. 1985); cf. United States v. Field, 62 F.3d 246, 249 (8th Cir. 1995) (recognizing the forfeiture of substitute asset pertains "post-conviction"). As such, the Court cannot conclude that substitute assets are precluded by the plain language of § 2461(c) itself.

Indeed, when one examines § 2461(c), in the context of the statutory framework of the forfeiture statutes overall and from a historical perspective, any basis for determining that Congress deliberately intended to incorporate something less by its use of the word "procedures" evaporates. Criminal forfeiture through an *in personam* proceeding was first adopted in the RICO statute, 18 U.S.C. § 1961, et seq. See Pub. L. No. 91-452, §§ 901-904 (1970); Croce I, 334 F. Supp. 2d at 787-88. 21 U.S.C. § 853, pertaining to the criminal forfeiture of property related to narcotics offenses, followed in 1984. Pub. L. No. 98-473, Title II, § 303, 98 Stat. 2044 (1984). In this same Act, Congress amended § 1963 of the RICO statute to allow for the forfeiture of substitute assets. Pub. L. No. 98-473, Title II, § 302, 98 Stat. 2040, 2193 (1984). The criminal forfeiture statute pertaining

to drug violations did not originally include the forfeiture of substitute assets.  Pub. L. No. 98-473, Title II, § 303, 98 Stat. 2044 (1984).  In both the RICO statute and the criminal drug forfeiture provision, Congress fully set out the procedures that applied.  Other early forfeiture statutes likewise included extensive language setting forth the procedures.  <u>See</u> 18 U.S.C. § 1467 (criminal forfeiture regarding obscene material, adopted in 1988); 18 U.S.C. § 2253 (criminal forfeiture pertaining to child pornography statutes; adopted in 1984).  <u>See generally</u> <u>Razmilovic</u>, 419 F.3d at 138.

In 1986, Congress adopted The Anti-Drug Abuse Act of 1986 (the "1986 Act"), which first included many of the statutory sections at issue in this case.  Pub. L. No. 99-570, H.R. 5484 (1986).  Subtitle D, entitled "Assets Forfeiture Amendments Act of 1986," included amendments permitting the forfeiture of substitute assets in both RICO and drug cases.  <u>See</u> Pub. L. No. 99-570; codified as 18 U.S.C. § 1963(m) (RICO) and 21 U.S.C. § 853(p) (drug cases).

Under subtitle H, entitled "Money Laundering Control Act of 1986," Congress added new offenses for the laundering of monetary instruments, 18 U.S.C. § 1956; engaging in monetary transaction in property derived from specified unlawful activity, 18 U.S.C. § 1957; and structuring transactions to evade reporting requirements, 31 U.S.C. § 5324.  At this time, Congress changed its format and enacted generalized forfeiture statutes that cross-referenced the substantive criminal provisions.  18 U.S.C. § 981(a)(1) allowed for civil forfeiture of certain proceeds of violations of §§ 1956 and 1957 (enacted as § 981(a)(1)(A)); the controlled substances statutes (enacted as § 981(a)(1)(B)); and the

monetary instruments provision (enacted as § 981(a)(1)(C)).  The criminal forfeiture

statute, 18 U.S.C. § 982, allowed criminal forfeiture for violations of the money

laundering statutes found in §§ 1956 and 1957.  Rather than enact procedures within the

money laundering statutes themselves, as it had done previously, in subsection (b) of 18

U.S.C. § 982, Congress affirmatively incorporated some of the provisions of 21 U.S.C. §

853, as follows:

> Section 982. "18 U.S.C. 982" Criminal forfeiture
> (a) The court, in imposing sentence on a person convicted of an offense
> under section 1956 or 1957 of this title shall order that the person forfeit to
> the United States any property, real or personal, which represents the gross
> receipts the person obtained, directly or indirectly, as a result of such
> offense, or which is traceable to such gross receipts.
> (b) The provisions of subsections 413(c) and (e) through (o) of the
> Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C.
> 853(c) and (e) – (o)) shall apply to property subject to forfeiture under this
> section, to any seizure or disposition thereof, and to any administrative or
> judicial proceeding in relation thereto, if not inconsistent with this section.

Pub. L. No. 99-570, Title I, § 1366(a), 100 Stat. 3707-39 (1986).

Over the next years, Congress expanded the availability of criminal forfeiture for

additional categories of violations, by incorporating those statutes in additional

subsections of 18 U.S.C. § 982.  In 1988, as part of the "Anti-Drug Abuse Act of 1988,"

Congress added violations of the currency reporting requirements, 31 U.S.C. §§ 5313(a),

5316, and 5324, to § 982(a) of the criminal forfeiture statute.  Pub. L. No. 100-690, §

6463, 102 Stat. 4374, 4375 (1988).  It also allowed the forfeiture of substitute assets for

money laundering offenses, including the currency reporting violations, by adding

subsection (p) to the paragraphs of 21 U.S.C. § 853 that it had previously incorporated.

23

Pub. L. No. 100-690, § 6464, 102 Stat. 4374, 4375 (1988) (entitled "Forfeiture of Substitute Assets for Money Laundering Offense"). The statute also added a proviso, expressly stating, in 18 U.S.C. § 982(b), that the substitute assets provision of § 413(p) shall not be used where the defendant merely acted as an intermediary. Id.

As discussed above, in 1989, Congress added provisions allowing for the civil and criminal forfeiture for violations involving financial institution fraud. Pub. L. 101-73, § 963, 103 Stat. 504 (1989). The criminal forfeiture provision with respect to financial institution fraud was included as a new § 982(a)(2), while the language allowing criminal forfeiture for the money laundering and currency reporting violations were renumbered as subsection (a)(1). As to each subsection, Congress also specifically incorporated certain provisions § 853, including § 853(p), pertaining to substitute assets. As amended, § 982(b) provided that forfeiture with respect to the money laundering provisions in § 982(a)(1) would continue to be governed "subsections (c) and (e) through (p) of . . . 21 U.S.C. 853." Id.; adopted as 18 U.S.C. § 982(b)(1)(A). Forfeiture with respect to the provisions of § 982(a)(2) would be governed by "subsections (b), (c), (e), and (g) through (p) of [18 U.S.C. § 853]." Pub. L. No. 101-73, § 963 (1989).

By 1999, there were 8 separate subsections of 18 U.S.C. § 982(a), specifying different categories of violations that would allow for criminal forfeiture. With one exception, pertaining to certain passport and visa violations (see 18 U.S.C. § 982(a)(7)(A) and (B) (1999)), § 982(b) was amended to adopt language similar to the current version, adopting all provisions of 21 U.S.C. § 853, other than subsection (d), with respect to all

criminal forfeitures:[8]

> "(b)(1) The forfeiture of property under this section, including any seizure
> and disposition of the property and any related judicial or administrative
> proceeding, shall be governed by the provisions of section 413 (other than
> subsection (d) of that section) of the Comprehensive Drug Abuse
> Prevention and Control Act of 1970 (21 U.S.C. 853)."

18 U.S.C. § 982(b)(1)(1999 version).

During this same time period, while Congress was adding categories of violations to § 982 for such things as immigration violations and telemarketing fraud, it also continued to create new federal crimes that allowed for criminal forfeiture and to expand existing crimes to allow for forfeiture. Typically, Congress would specify in those statutes the types of proceeds subject to criminal forfeiture and incorporate 21 U.S.C. § 853, usually excepting only the rebuttable presumption found in § 853(d). The language Congress used to incorporate § 853, however, varied greatly from statute to statute. See Razmilovic, 419 F.3d at 138 & n.2 (cataloging adoption language in various statutes). Some of the later statutes or amendments labeled the language incorporating § 853 as forfeiture "procedures" See, e.g., 18 U.S.C. § 1028(g) (forfeiture under identity theft statute "shall be governed by the provisions" of § 853, other than subsection (d); labeled "Forfeiture procedures"); 18 U.S.C. § 1029(c)(2) (forfeiture for access device fraud "shall be governed by" § 853, except for subsection (d); labeled "Forfeiture procedure").

---

[8] Subsection (b)(2) of § 18 U.S.C. still limited the substitute asset provision with regard to money laundering violations as to mere intermediaries, but by now had added language disallowing the exception with respect to defendants who conducted 3 or more transactions involving $100,000 or more within a 12-month period.

From this statutory progression several patterns emerge. First, Congress did not carelessly adopt substitute assets as an aspect of criminal forfeiture proceedings. It first added the remedy to the RICO statute, then to criminal drug violations, and then to money laundering crimes, with an express exception for intermediaries. Congress thereafter continued to incorporate the substitute asset provision as it made criminal forfeiture applicable to new violations. Second, over time Congress expanded the parts of 21 U.S.C. § 853 applicable to the various criminal forfeiture statutes, eventually incorporating all but § 853(d) in almost all instances.

Against this backdrop, Congress adopted CAFRA on April 25, 2000. As discussed above, Congress enacted sweeping changes to the civil forfeiture procedures, and added 18 U.S.C. § 983, "General rules for civil forfeiture proceedings," which spans several pages. Pub. L. No. 106-185, § 2(a), 114 Stat. 202 (2000). Congress also eliminated the separate subsection incorporating specific portions of § 853 with regard to immigration, passport, and visa violations, leaving 18 U.S.C. § 982(b)(1) and (2) as the only incorporation section. Pub. L. No. 106-185, § 18(b), 114 Stat. 223 (2000).

The following year, as part of the USA Patriot Act of 2001, Congress enacted wide-ranging changes to the money laundering and currency reporting statutes, in part expanding their reach to certain foreign transactions. See Pub. L. No. 107-56, Tit. III, 115 Stat. 323 (2001). Included among the many changes was an expansion of the substitute asset provision in § 853(p), to add a provision for the return of property to the jurisdiction under certain circumstances, see 21 U.S.C. § 853(p)(3), and a provision

authoring an order to repatriate and deposit, under § 853(e), <u>see</u> 21 U.S.C. § 853(e)(4).

Congress also increased the statutory penalties for violations of 31 U.S.C. §§ 5321 and

5322; added a new § 5324(c) to Title 31, making it a crime to commit certain

international reporting violations; and added numerous other provisions designed to reach

the various ways that individuals avoided the currency reporting requirements.  In

connection with this massive overhaul of the currency reporting statutes, Congress

removed violations of 31 U.S.C. §§ 5313, 5317 or 5324 from the general criminal

forfeiture statute, 18 U.S.C. § 982, and instead amended 31 U.S.C. § 5317(c) to allow for

both civil and criminal forfeiture, as follows:

> (a) IN GENERAL.--Subsection (c) of section 5317 of title 31, United States
> Code, is amended to read as follows:
> (c) FORFEITURE.--
>  (1) CRIMINAL FORFEITURE.--
>   (A) IN GENERAL.--The court in imposing sentence for any violation of
> section 5313, 5316, or 5324 of this title, or any conspiracy to commit such
> violation, shall order the defendant to forfeit all property, real or personal,
> involved in the offense and any property traceable thereto.
>   (B) PROCEDURE.--Forfeitures under this paragraph shall be governed
> by the procedures established in section 413 of the Controlled Substances Act.
>  (2) CIVIL FORFEITURE.--Any property involved in a violation of
> section 5313, 5316, or 5324 of this title, or any conspiracy to commit any
> such violation, and any property traceable to any such violation or
> conspiracy, may be seized and forfeited to the United States in accordance
> with the procedures governing civil forfeitures in money laundering cases
> pursuant to section 981(a)(1)(A) of title 18, United States Code."

Pub. L. No. 107-56, 115 Stat. 335, 338; currently enacted as 31 U.S.C. § 5317(c).  This is

the language that was construed by the district court in <u>Rodriguez</u>.

In light of this statutory progression, it is difficult to accept Defendant's reasoning or the analysis in <u>Rodriguez</u>. The opinion in <u>Rodriguez</u> fails to discuss the history of the substitute asset provisions with respect to the currency reporting violation statutes. It is difficult to believe that after having expressly allowed for substitute assets with respect to currency reporting violations since 1988, Congress intended to eliminate substitute assets with respect to such violations in the context of a statute otherwise expanding the reach of the currency reporting statutes, increasing the penalties for such violations, and criminalizing actions calculated to circumvent the currency reporting requirements.

It is even more difficult to believe that Congress elected to eliminate the availability of substitute assets with respect to currency violations through the subtle language change of using the word "procedures" rather than "provisions." Such a conclusion appears especially unlikely where, as here, Congress had been so deliberate and express in the manner in which it expanded the reach of § 853(p) to new statutes, all the while expressly excepting its application in narrow situations. Nor can the Court perceive why Congress would allow substitute assets with respect to violations such as access device fraud, but not for violations of the newly-created e-mail fraud statute, 18 U.S.C. § 1037, which incorporates § 853 "procedures."

It appears, instead, that by the time CAFRA was adopted, Congress had begun to use "procedures" and "provisions" somewhat interchangeably, as illustrated by that fact that several of the subsections incorporating the "provisions" of § 853 are labeled as the "procedures" pertaining to the forfeiture statutes. After adopting the sweeping changes to

the civil forfeiture procedures in CAFRA, Congress thereafter began to use the general

"procedures" language in some statutes, including the amendments to the currency

reporting statutes discussed above.  Compare 18 U.S.C. § 38(d) (incorporating § 853

"provisions," enacted pre-CAFRA) with 18 U.S.C. § 1037(c)(2) (incorporating § 853

"procedures, " enacted post-CAFRA).

This conclusion is also bolstered by the recent amendment to 28 U.S.C. § 2461(c).

In March 2006, under the title, "Uniform procedures for criminal forfeiture," Congress

amended § 2461(c) as follows:

> If a person is charged in a criminal case with a violation of an Act of
> Congress for which the civil or criminal forfeiture of property is authorized,
> the Government may include notice of the forfeiture in the indictment or
> information pursuant to the Federal Rules of Criminal Procedure.  If the
> defendant is convicted of the offense giving rise to the forfeiture, the court
> shall order the forfeiture of the property as part of the sentence in the
> criminal case pursuant to the Federal Rules of Criminal Procedure and
> section 3554 of title 18, United States Code.  The procedures in section 413
> of the Controlled Substances Act (21 U.S.C. 853) apply to all stages of a
> criminal forfeiture proceeding, except that subsection (d) of such section
> applies only in cases in which the defendant is convicted of a violation of
> such Act.

28 U.S.C. § 2461(c) (March 9, 2006).  See Pub. L. No. 109-177, Title IV, § 410, 120

Stat. 246 (2006).[9]

Both its title and its language make plain that it is to apply uniformly to all

criminal forfeiture proceedings – including criminal forfeiture proceedings involving drug

---

[9]  The government asserts that Congress passed this amendment in reaction to the decision
in Razmilovic, 419 F.3d 134 (2d Cir. 2005), but it cites to no authority for that conclusion.

violations.  And it requires a sentence pursuant to 18 U.S.C. § 3554, which cross-references the provisions of 21 U.S.C. § 853.  Yet here, too, Congress uses the word "procedures," and not "provisions."  Further, if language referencing the "procedures" of § 853 means something less than the "provisions" of § 853, and does not include the subsection pertaining to substitute assets, then Congress will effectively have eliminated the availability of substitute assets with regard to almost all criminal forfeiture statutes, including 18 U.S.C. § 982.  This plainly is not what Congress intended.

For the foregoing reasons, the Court finds that Congress intended to incorporate the substitute asset provision of 21 U.S.C. § 853(p) when it adopted 28 U.S.C. § 2461(c).

## D.  <u>Adequacy of the Indictment</u>

Defendant's final argument requires little discussion.  She asserts that the indictment is insufficient to allege forfeiture of Defendant's real property under Rule 7(c)(2) of the Federal Rules of Criminal Procedure.  Rule 7(c)(2) provides:

> No judgment of forfeiture may be entered in a criminal proceeding unless the indictment or the information provides notice that the defendant has an interest in property that is subject to forfeiture in accordance with the applicable statute.

Citing <u>United States v. Hatcher</u>, 323 F.3d 666, 673 (8th Cir. 2003), Defendant asserts that the indictment must advise Defendant whether the real property is alleged to be an instrumentality or product of the crime and advise how the alleged proceeds of the mail fraud or wire fraud relate to or otherwise became part of this real property.

However, the language of Rule 7(c)(2) requires only that the indictment provide notice to a defendant that he has an interest in property that is subject to forfeiture under the applicable statute; it does not require that the indictment detail the facts that would support such a forfeiture. Hatcher, cited by Defendant, does not suggest otherwise. There the Court stated that "to plead a forfeiture adequately, the government must set for *the property* subject to forfeiture with enough particularity for the defendant to marshal evidence in his defense." Id., 323 F.3d at 673 (emphasis added) (citing United States v. Possick, 849 F.2d 332, 340-41 (8th Cir. 1988)). Where the indictment specified that the government would seek forfeiture of all property stolen from the jewelry store, stated it would seek substitute assets it did not otherwise identify, and cited to the relevant statutes, the Court in Hatcher found the indictment to be adequate. Id. at 673. See also United States v. Loe, 248 F.3d 449, 464 (5th Cir. 2001) (indictment that notified defendant of the property it sought to forfeit, but did not specify the interest in the property subject to forfeiture, found adequate; indictment is sufficient if it puts defendant on notice government seeks forfeiture and identifies the assets with sufficient specificity to permit defendant to marshal evidence in defense); United States v. Dolney, 2005 WL 1076269, at *9 (E.D.N.Y. May 3, 2005) (Rule 7(c) requires the government give notice it will be seeking forfeiture in accordance with the applicable statute; it does not require a substantive allegation describing the property or defendant's interest in the property in detail).

Here the indictment specifies with particularity the three parcels of property it seeks to forfeit, and alleges they are subject to forfeiture "as set out in paragraph 2 above." (Count 62, ¶ 4). Paragraph 2, in turn, cites to the particular statutes on which the government relies for the forfeiture and tracks the language of those statutes. Nothing more is required.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Dismiss Count Sixty-Two of the Indictment [Doc. No. 24] be **denied**.

The parties are advised that they have eleven (11) days, to and including July 17, 2006, in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir.1990).

AUDREY G. FLEISSIG
United States Magistrate Judge

Dated this 5th day of July, 2006.